THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| | : | |
| v. | : | 01-cr-778-02 |
| | : | |
| STEPHEN ERIK CHILDS | : | 06-cv-4906 |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.,**　　　　　　　　　　　　　　　　　　　　　　　　**October 1, 2007**

Stephen Erik Childs moves to vacate his sentence because his attorney allegedly failed to investigate a potential diminished capacity downward departure. The Government contends Childs's sentencing attorney, Patrick Egan, Esq., considered this departure, but instead argued Childs's extraordinary rehabilitation merited a departure. The Government alternatively argues Childs cannot show prejudice because Egan's strategy reduced Childs's sentence by 52 months. Childs's ineffective assistance of counsel claim and motion to vacate his sentence are denied.

**FACTS**

On May 17, 2002, a jury convicted Childs of one count of conspiracy to distribute 6,500 pills of ecstasy, violating 21 U.S.C. § 846, and one count of possessing with intent to distribute about 3,410 pills of ecstasy, violating 21 U.S.C.§§ 841(a)(1) and 841(b)(1)(C). On July 30, 2003, the late Honorable Clarence Newcomer sentenced Childs to 262 months in prison. Childs appealed to the Third Circuit; his sentence was vacated after *Booker*.[1]

---

[1] Childs challenged Judge Newcomer's 1) denial of the suppression motion; (2) denial of the motion to dismiss based on alleged discovery violations; and (3) refusal to give Childs's jury instruction on "innocent intent." After fully briefing these issues, Childs filed a letter with the Court challenging his sentence in light of *United States v. Booker*, 543 U.S. 220 (2005). On April 19, 2005, the Court

To prepare for re-sentencing, Egan[2] evaluated different legal strategies with Childs, who was always actively involved in his legal defense. Childs requested Egan raise several legal challenges, but Egan, based on his experience, chose only to make the best arguments. Egan considered a diminished capacity departure under U.S.S.G. § 5k2.13. In evaluating this strategy, Egan asked Dr. Alan Tepper, who originally evaluated Childs for trial, to perform another psychological evaluation of Childs.

Dr. Tepper's analysis included extensive clinical interviews with Childs, an intelligence inventory, a sentence completion test, and a review of selected discovery materials. Childs discussed his family background, living situation, interpersonal relationships, and history of education, employment, medical, mental, and substance abuse. Based on these discussions and tests, Dr. Tepper diagnosed Childs with cyclothymic disorder,[3] impulse control disorder,[4] and hallucinogen abuse. Dr. Tepper stated Childs was able to "distinguish between internal fantasy and external reality," his thoughts flowed logically and consistently, and he "display[ed] no signs or symptoms of a psychotic disturbance or an underlying thought disorder." Dr. Tepper's Eval. Rep. 5.

Based on Egan's prior experience with diminished capacity and his review of the case law, Egan found Dr. Tepper's report was not strong enough to support a diminished capacity departure

---

of Appeals affirmed Childs's conviction, but vacated the sentence and remanded for re-sentencing under *Booker*.

[2] Egan, a 1986 Temple Law School graduate, has practiced criminal defense work since 1992. He has tried nine federal homicide cases and many drug cases. He has represented defendants in over 100 federal sentencings. He is also an adjunct professor at Temple University School of Law.

[3] Cyclothymic disorder, DSM-IV 301.13, is a chronic bipolar disorder.

[4] Childs was diagnosed with Impulse-Control Not Otherwise Specified (DSM-IV, 312.30).

motion. He decided pursuing such a motion would ultimately fail. Egan decided to emphasize the positive rather than presenting an evaluation of Childs's physically abusive relationship with his father and his extensive substance abuse of marijuana, LSD, and cocaine.

At the re-sentencing hearing on October 24 and 25, 2005, Egan argued Childs's career offender status overstated his criminal history and urged me to depart from the guidelines pursuant to 18 U.S.C. § 3553.[5] Egan argued I should depart from the applicable guideline range of 262-327 months because of Childs's dramatic steps to rehabilitate himself since his incarceration. Childs's loved ones and family testified about Childs's extraordinary rehabilitation. Specifically, Childs's partner, Adelle Childs, testified about Childs's remorse and his efforts to promote various charities in the Florida community. Childs's parents testified Childs had changed for the better and was recovering from a troubled past that included serious substance abuse. Childs, also exercised his right of allocution informing me of his remorse and impressive metamorphosis.[6] Egan argued these

---

[5] Egan specifically argued: (1) Childs was not a career offender because the applicable prior convictions were not charged in an indictment or proven to a jury beyond a reasonable doubt; (2) the record lacked evidence for Childs's simple assault conviction to count as a violent felony under the career offender status; (3) Childs's sentence should not be enhanced for committing the offense within two years of release from prison because that fact was not charged in an indictment or proven to a jury beyond a reasonable doubt; (4) applying *Booker* to this case violates the Constitution's *ex post facto* clause; and (5) Childs's sentence should not be enhanced for obstruction of justice because his perjury was not charged in an indictment or proven to a jury beyond a reasonable doubt.

[6] Childs told the Court:
> My perception of everything was completely wrong, your Honor, and lying to the jury . . . was flat wrong. That's all. . . . Part of the reason I even got into selling drugs in the beginning is because I thought this was what it was – this is what it meant to be black. That's what I thought. You're supposed to resist and so. That's how I grew up unfortunately because of the environment that I was in and I didn't grow up in the gutter. That's where I chose to go to hang out and it just, it changed me . . . . [I]f I would had to walk all of this over again, I wouldn't even be here. I feel terrible. I was selfish . . . . [Y]ou won't see me again for violating the law, I can promise you that. I'm sorry.

facts demonstrated the applicable guideline range was excessive and the 18 U.S.C. § 3553(a) factors required a reasonable sentence of 120 months.

After hearing arguments, I took the matter under advisement to consider Egan's argument for a departure based on Childs's impressive rehabilitation. Eagan's argument regarding Childs's rehabilitation efforts persuaded me, but they could not erase the seriousness of the offense, Childs's perjury at trial, and his extensive criminal history. I sentenced Childs to 210 months, a 52 month-reduction, because of his extraordinary rehabilitation efforts.

**DISCUSSION**

I must decide whether Egan rendered ineffective assistance of counsel when he failed to investigate a diminished capacity departure based on the information he had at the time of his decision. To prevail, Childs must prove the following: 1) the attorney fell below the objective standard of practice of law and 2) this conduct prejudiced the client, in that but for counsel's unprofessional errors, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 689-90 (1984). When evaluating the attorney's choices and actions, courts must remember "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Judicial scrutiny of counsel's performance must be highly deferential. *Id.*

In evaluating whether the attorney fell below the objective standard of law, the court must determine "whether in light of all the circumstances the identified acts or omissions were outside the range of professionally competent assistance." *Id.* The quantum and quality of the attorney's investigation and his/her resulting decisions are considered. "Strategic choices made after thorough

---

Sentencing Tr. 59-60, Oct. 24, 2005.

investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-91. Choices, after less than complete investigation, are reasonable to the "extent that reasonable professional judgments support the limitations on the investigations" and are entitled to less deference than choices made after complete investigation. *United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997).

The reasonableness of the attorney's investigation is determined by counsel's knowledge of the evidence, and "whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 524 (2003). Failure to raise meritless arguments does not violate the defendant's Sixth Amendment right to effective counsel. *Sistrunk v. Vaughn*, 96 F.3d 666, 671 (3d Cir. 1996) (finding counsel is not obligated to raise arguments court would ultimately overrule under prevailing law); *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir.1999) (citing cases from other circuits concluding the same). Attorneys are not required "to investigate every conceivable line of mitigating evidence," but courts must evaluate a decision not to investigate for reasonableness within the specific circumstances. *Wiggins*, 539 U.S. at 512; *Rompilla v. Beard,* 125 S. Ct. 2456 (2005); *Marshall v. Hendericks*, 307 F.3d 36, 99-107 (3d Cir. 2002).

To prepare for Childs's sentencing, Egan had the following information: Childs's Pre-Sentencing Investigation Report (outlining Childs's extensive substance abuse history, his troubled relationship with his father and family, and his extensive criminal history); Dr. Tepper's report diagnosing Childs with cyclothymic disorder, impulse control disorder, and hallucinogen abuse; knowledge and evidence of Childs's extraordinary rehabilitative efforts; and case law for both 18 U.S.C. § 3553 and diminished capacity. A successful diminished capacity departure required Egan to prove by a preponderance of the evidence Childs committed the offense while suffering from a

significantly reduced mental capacity and significantly reduced mental capacity contributed substantially to the commission of the offense. U.S.S.G. § 5k.2.13. Significantly reduced mental capacity is defined as the "significantly reduced ability to understand the wrongfulness of the behavior compromising the offense or to exercise the power of reason; or control behavior the Defendant knows is wrongful." *Id.*; *see United States v. McBroom*, 124 F.3d 533, 534-35 (3d Cir. 1997) (vacating and remanding because district court did not consider whether defendant's conduct fell under 5k2.13's volitional prong). No departure is granted if voluntary drug use caused the diminished capacity or the defendant's extensive criminal history demonstrates a need to incarcerate.[7]

I must evaluate the quantum and quality of Egan's investigation and whether his failure to fully investigate the diminished capacity departure further fell below an objective level of professional care. I conclude it did not. Dr. Tepper's report stated Childs's thoughts flowed logically and consistently and failed to support a "significantly reduced ability to understand the wrongfulness of the behavior compromising the offense or to exercise the power of reason." U.S.S.G. § 5k2.13. This report diagnosed Childs with impulse control disorder and further investigation could have assisted in proving Childs met the departure's volitional impairment prong. *McBroom*, 124 F.3d at 547-48. Dr. Tepper's report, however, also diagnosed Childs with hallucinogen abuse, which stems from Childs's abuse of drugs, particularly LSD. Courts are prohibited from granting this departure if voluntary drug use caused the diminished capacity or if the

---

[7] Courts are prohibited from granting the departure if 1) voluntary drug use caused the diminished capacity; 2) Defendant's offense involved violence or serious threat of violence; 3) Defendant's extensive criminal history demonstrates a need to incarcerate the Defendant to protect the public; or 4) Defendant convicted of offense under 18 U.S.C. § 71, 109A, 110, or 117. U.S.S.G. § 5k2.13.

defendant's criminal history demonstrates a need to incarcerate. U.S.S.G. § 5k2.13. Given the departure's questionable success due to Childs's extensive substance abuse and criminal history, Egan's decision not to fully investigate this departure was reasonable. *Vaughn*, 96 F.3d at 671(counsel not obligated to raise arguments court would ultimately overrule under prevailing law).

Childs argues *McBroom* and the diagnosis of impulse control disorder and cyclothymic/biploar disorder should have caused Egan to investigate further. I disagree. McBroom, like Childs, was diagnosed with impulse control disorder and a bipolar disorder, but McBroom, unlike Childs, could closely relate his disorder to his crime and lacked an extensive criminal history. *See McBroom*, 124 F.3d at 537 (indicating McBroom had a Criminal History Category of II).[8] At sentencing, McBroom provided the Court with psychological reports stating his sexual abuse prompted and developed his uncontrollable compulsion to view pornography. *Id.* at 539. Dr. Tepper's report only stated Childs had an impulse control disorder and cyclothymic disorder. It did not suggest these disorders caused him to conspire with others in a complex organization responsible for distributing more than 6,000 ecstasy pills, possess with intent to distributing more than 3,000 ecstasy pills, or caused him to commit perjury.[9] Absent evidence of such causation, further investigation into this departure would have been futile. *Vaughn*, 96 F.3d at 671. Both Childs and McBroom have substance abuse histories, but McBroom's evaluation reports link the substance abuse to his compulsive and obsessive disorders which arose from his sexual abuse as a child. *McBroom*, 124 F.3d at 538-40. Dr. Tepper's report did not provide, nor suggest, Childs's disorders

---

[8] As a criminal career offender, Childs had the highest possible Criminal History Category of VI.

[9] Childs contends Egan also failed to investigate whether the diminished mental capacity would defeat the obstruction of justice enhancement he received for committing perjury during his trial. This argument fails because Childs cannot show he was prejudiced as discussed below.

arose from his substance abuse. McBroom could argue his substance abuse was a result of his compulsion and defend against the departure's voluntary substance abuse prohibition. There was nothing in Dr. Tepper's report that could provide Childs or Egan with such a defense against the voluntary substance abuse prohibition. *Id.* at 538-39.

*McBroom* is also procedurally distinguishable. *McBroom* decided whether the district court erred because it did not consider application of the departure's volitional impairment. *Id.* at 534-35. *McBroom* was not an ineffective assistance of counsel case. Although the Third Circuit remanded *McBroom* for re-sentencing, it recognized the district court could exercise its discretion and find the departure did not apply. *Id.* at 550 n. 17. It was not ineffective assistance of counsel for Egan not to investigate the departure further based on *McBroom* and its application to Childs.

Alternatively, Childs cannot prove Egan provided ineffective assistance of counsel because he cannot show prejudice. Childs must show but for Egan's acts or omissions, the outcome would have been different. *Strickland*, 466 U.S. at 694. Egan's strategy not to investigate the diminished mental capacity departure further and instead emphasize Childs's rehabilitative efforts proved successful. A jury convicted Childs, so he did not receive any reductions for acceptance of responsibility, timely cooperation, or any other motion for leniency from the Government. Despite this challenge, Egan used Childs's rehabilitative efforts to persuade this Court to exercise its discretion under 18 U.S.C. § 3553(e) to reduce Childs's sentence by more than four years.

Childs contends he was prejudiced because these arguments were not mutually exclusive and Egan could have argued both and ultimately received a lesser sentence. Childs is correct such arguments are not mutually exclusive, but Egan was correct to assess arguing both would diminish the credibility of Childs's rehabilitative efforts. Arguing the diminished capacity would require

8

evidence, testimony, and discussion of Childs's extensive substance abuse, physically violent relationship with family members, and extensive criminal history.  Discussion and consideration of such evidence would have prevented the Court from accepting and rewarding Childs's impressive rehabilitative efforts.  Such evidence would have undermined Childs's rehabilitation because it attempts to justify Childs's conduct, while the rehabilitation evidence accepted the consequences.  The rehabilitation evidence, including Childs's apologetic allocution, presented Childs as a remorseful individual who accepted responsibility for his conduct and had decided to promote charities in Florida.  The rehabilitation evidence persuaded me 210 months was a reasonable sentence for Childs because it demonstrated Childs had accepted responsibility for his conduct and was attempting to become a contributing member of society.

      An appropriate order follows.